DAIRYLAND POWER COOPERATIVE ET AL., APPELLEES, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT ET AL., APPELLANTS.
472 N.W.2d 363

Filed July 19, 1991.   Nos. 90-764 through 90-780, 90-785.

Don Stenberg, Attorney General, and L. Jay Bartel for appellants.

George A. Penry for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The State Board of Equalization and Assessment (State Board) and the State Tax Commissioner appeal the judgment of the district court for Lancaster County that the appellee claimants were entitled to refunds of personal property taxes paid for the 1986 tax year.

In 1986 and previous years, the claimants were taxed as car companies under Neb. Rev. Stat. §§ 77-624 to 77-633 (Reissue 1986). In December 1988, the claimants submitted requests for refunds to the Tax Commissioner pursuant to Neb. Rev. Stat. § 77-1775 (Reissue 1986). In its request, Dairyland Power Cooperative (case No. 90-764) sought a refund of Nebraska private car company personal property taxes paid for tax years 1984, 1985, and 1986. In two requests submitted to the Tax Commissioner, Midwest Energy Services Company (case No. 90-765) sought refunds of private car company personal property taxes paid for tax years 1985 and 1986. The other claimants sought refunds of private car company personal

property taxes paid for tax year 1986.

In support of their requests for refunds, the claimants contended the assessment of their personal property and the imposition, levying, or collection of any taxes against them or their property pursuant to §§ 77-624 et seq. violated § 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. 94-210, 90 Stat. 31, 54, codified as amended at 49 U.S.C. § 11503(b)(4) (1988) (the 4-R Act), and were illegal. The claimants advised the Tax Commissioner that the illegality of such taxation had been determined by the U.S. District Court for the District of Nebraska in *Trailer Train Co. et al. v. Leuenberger*, No. CV87-L-29, (D. Neb. Dec. 11, 1987), *aff'd* 885 F.2d 415 (8th Cir. 1988), *cert. denied, Boehm v. Trailer Train Co.*, 490 U.S. 1066, 109 S. Ct. 2065, 104 L. Ed. 2d 630 (1989).

On March 1, 1989, the Tax Commissioner recommended to the State Board that the claims for refund be denied. A hearing was held before the State Board on March 22, 1989. On April 12, 1989, the State Board denied the requests. The State Board found that for claims filed for tax year 1986 and prior tax years, the car companies'

> reliance upon the U.S. District Court for the District of Nebraska decision in Trailer Train v. Donald S. Leuenberger, CV87-L-29, issued December 11, 1987, is misplaced. One, the Trailer Train decision is limited to a determination of discrimination pursuant to the federal 4-R Act applicable only to the plaintiffs in the case for tax year 1986. Two, the exclusive remedy for relief, pursuant to the 4-R Act, is injunctive relief. It does not invalidate a state tax, except as to plaintiffs who have raised the claim of discrimination in a manner timely to avail themselves of injunctive relief....
>
> ... For claims filed for tax year 1985 and prior tax years, the claims are barred by the statute of limitations contained in section 25-218, R.R.S. 1943. The statute requires that claims against the state must be brought within two years from the date such claims arose. Section 77-629, R.R.S. 1943, states that the due date for car company taxes is December 31. Therefore, all claims filed

for tax years 1985 filed after January 1, 1988, are barred by the statute of limitations, as are all claims filed for tax years prior to 1985. Alternatively, [regarding] all claims for 1985 and prior years, there has been no determination that the tax is invalid for any reason for those tax years.

. . . For claims made that the valuation so determined for the tax years involved is not uniform and proportionate as compared with all other tangible property, the claim is not properly before the State Board. Pursuant to Rule 11 of the State Board, repealed on January 1, 1986, or Nebraska Department of Revenue Regulation 33-006, the Claimant had 30 days from the date of the assessment to protest the assessment. The Claimant's exclusive remedy for redress of disproportionate valuation is to appeal the assessment in the manner prescribed. The State Board is without jurisdiction to hear the claim. Beshore v. Sidwell, 222 Neb. 441 (1986).

The claimants timely appealed to the district court for Lancaster County pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-917 through 84-920 (Reissue 1987). (Sections 84-917 through 84-919 were amended, effective July 1, 1989. See Cum. Supp. 1990.) In their petitions, filed in late April and early May 1989, the claimants alleged they were entitled to refunds because the assessment, imposition, and collection of car company taxes were illegal due to the decision of the U.S. District Court for the District of Nebraska in *Trailer Train Co. et al. v. Leuenberger, supra*. The claimants contended that in light of the federal district court's decision in *Trailer Train Co.*, their substantial rights had been prejudiced because the State Board's decision was (1) in violation of constitutional due process and made upon unlawful procedure, (2) affected by errors of law, (3) arbitrary and capricious, and (4) unsupported by competent, material, and substantial evidence. See § 84-917(6)(a) (Cum. Supp. 1990).

On July 27, 1990, the district court for Lancaster County affirmed the orders of the State Board denying claims for refunds of car company taxes paid in 1984 and 1985. Regarding tax year 1986, however, the district court reversed the decision

of the State Board and ordered judgment for each claimant in the amount of car company taxes it paid in 1986 (totaling $263,011.74), plus interest.

The State Board and Tax Commissioner have appealed to this court, contending the district court erred (1) in basing its decision on evidence which was in addition to and outside the scope of the record created before the State Board, (2) in finding the claimants were entitled to a refund under § 77-1775 for taxes imposed pursuant to §§ 77-624 et seq. for the 1986 tax year, and (3) in finding the claimants were entitled to a refund under Neb. Rev. Stat. § 77-1736.04 (Reissue 1986) for taxes imposed pursuant to §§ 77-624 et seq. for the 1986 tax year. There is no cross-appeal.

I

In connection with the appellants' first assignment of error, the record shows that the claimants offered 14 exhibits in evidence during the district court hearing. The appellants objected to the offer because the materials were not contained in the record made before the State Board. See § 84-917(5)(a). The district court took the matter under advisement but made no ruling on the admissibility of the claimants' exhibits. The exhibits, therefore, were not received in evidence, but the appellants contend the district court "plainly considered certain of these exhibits in rendering its decision reversing the action of the State Board," brief for appellants at 10, particularly the federal district court's rulings in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV88-L-52 (D. Neb. June 13, 1989), and *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV89-L-32 (D. Neb. June 13, 1989).

In response, the claimants argue that the district court erred if it did *not* receive the exhibits in evidence by judicial notice, in contravention of Neb. Evid. R. 201, Neb. Rev. Stat. § 27-201 (Reissue 1989), and apparently want this court to take judicial notice of the exhibits.

In general, rulings of the trial court which do not appear in the record are not considered on appeal. See, e.g., *County of Dakota v. Mallett*, 235 Neb. 82, 453 N.W.2d 594 (1990); *Howard v. Howard*, 234 Neb. 661, 452 N.W.2d 283 (1990);

*Chalupa v. Chalupa*, 220 Neb. 704, 371 N.W.2d 706 (1985). In this case, neither party requested a ruling on the claimants' offer. Therefore, we consider the State Board's first assignment of error only to determine the scope of the record for purposes of review in this court.

Section 84-917(5)(a) provides that if a petition instituting proceedings for review of the decision of an administrative agency was filed in the district court before July 1, 1989, the review shall be conducted by the district court without a jury "on the record of the agency." The district court's standard of review in this case was prescribed by § 84-917(6)(a), pursuant to which the district court

> may affirm the decision of the [State Board] or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the [claimants] may have been prejudiced because the [State Board] decision is:
>
> (i) In violation of constitutional provisions;
>
> (ii) In excess of the statutory authority or jurisdiction of the agency;
>
> (iii) Made upon unlawful procedure;
>
> (iv) Affected by other error of law;
>
> (v) Unsupported by competent, material, and substantial evidence in view of the entire record as made on review; or
>
> (vi) Arbitrary or capricious.

See, also, *Haeffner v. State*, 220 Neb. 560, 371 N.W.2d 658 (1985).

Since the claimants' petitions seeking review of the State Board's orders were filed in the district court before July 1, 1989, the scope of review in this court is de novo on the record. § 84-918(2) (Cum. Supp. 1990). See, also, *Department of Soc. Servs. v. Person*, 234 Neb. 865, 453 N.W.2d 390 (1990).

The claimants contend it was proper for the district court to take judicial notice of exhibits 1 through 14. Neb. Evid. R. 201, which governs judicial notice of adjudicative facts, provides in part:

> (2) A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known

within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(3) A judge or court may take judicial notice, whether requested or not.

(4) A judge or court shall take judicial notice if requested by a party and supplied with the necessary information.

. . . .

(6) Judicial notice may be taken at any stage of the proceeding.

The record shows that the claimants offered the following exhibits during the district court hearing: (1) § 306 of the 4-R Act; (2) 28 U.S.C.A. § 1341 (West 1976); (3) part of 1983 Neb. Laws, L.B. 193, regarding the amendment of § 77-624 in 1983; (4) legislative history of L.B. 193, including the introducer's statement of intent, the committee statement, and testimony before the Committee on Revenue; (5) another copy of § 306 of the 4-R Act; (6) order granting summary judgment in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV88-L-52 (D. Neb. June 13, 1989); (7) order granting summary judgment in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV89-L-32 (D. Neb. June 13, 1989); (8) class action complaint for injunctive and declaratory relief in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV88-L-52, *supra*, filed January 25, 1988; (9) memorandum and order certifying class in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV88-L-52, *supra*, filed June 28, 1988; (10) order for disbursement of funds in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV88-L-52, *supra*, and *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV89-L-32, *supra*, filed October 6, 1988; (11) practice and procedure rule 11 of the State Board, as published by Commerce Clearing House; (12) S. Rep. No. 499, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S. Code Cong. & Admin. News 14, 79-80, and S. Conf. Rep. No. 595, 94th Cong., 2d Sess. 133, *reprinted in* 1976 U.S. Code Cong. & Admin. News 148, 180-81, containing part of the legislative history of § 306 of the 4-R Act; (13) agreed order on injunction and leave to deposit money into the Registry of Court in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV88-L-52, *supra*,

filed January 26, 1988; and (14) part of the stipulation of facts in *Trailer Train Co. et al. v. Leuenberger*, No. CV87-L-29 (D. Neb.).

The appellants do not contend that these items are subject to reasonable dispute or are incapable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

We first observe that exhibits 13 and 14 appear in the record of the State Board hearing and were, for that reason, unquestionably within the scope of the district court's review.

Exhibits 1, 2, 3, and 5 consist of federal and state statutes. Neb. Rev. Stat. § 25-12,101 (Reissue 1989) of the Uniform Judicial Notice of Foreign Law Act provides that "[e]very court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States." We held in *State v. Thayer*, 235 Neb. 70, 453 N.W.2d 474 (1990), that it is the duty of the courts to take judicial notice of the laws enacted by the Legislature and that all courts must take judicial notice of the public law prevailing within the forum. Courts also take judicial notice of the public and general acts of Congress. *Standard Federal Savings & Loan Assn. v. Meins*, 226 Neb. 853, 415 N.W.2d 462 (1987).

Exhibits 4 and 12 consist of legislative history. This court takes judicial notice of the contents of legislative journals. *City of Grand Island v. Ehlers*, 180 Neb. 331, 142 N.W.2d 770 (1966); *Omaha Nat. Bank v. Jensen*, 157 Neb. 22, 58 N.W.2d 582 (1953). We have, on occasion, taken judicial notice of other legislative history. See, e.g., *Kaup v. Sweet*, 187 Neb. 226, 230, 188 N.W.2d 891, 894 (1971) ("[w]e take judicial notice of the legislative history of L.B. 1378, as we may").

Regarding exhibit 11, we have held that "[b]ecause establishing the existence and contents of a particular administrative rule or regulation at any given time is often a difficult and uncertain process, it is an established principle that, as a general rule, this court will not take judicial notice of such rules or regulations." *Donahoo v. Nebraska Liquor Control Comm.*, 229 Neb. 197, 199, 426 N.W.2d 250, 251 (1988). It is the burden of the party relying on an administrative rule or regulation to prove both its existence and its language.

*Id*. We therefore decline to take judicial notice of exhibit 11. In any event, exhibit 11 sets forth the State Board's procedure for valuing rail cars and is largely irrelevant to the disposition of this matter.

The remainder of the exhibits pertain to the federal district court decisions in *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV88-L-52 (D. Neb. June 13, 1989), and *Oklahoma Gas & Elec. Co. v. Boehm*, No. CV89-L-32 (D. Neb. June 13, 1989), which involved the Nebraska car company tax for 1987 and 1988. Although this lawsuit involves only taxes paid in 1984, 1985, and 1986, the claimants contend the *Oklahoma Gas* decisions are relevant to this appeal because both *Oklahoma Gas* cases were class actions involving all car companies subject to the Nebraska car company tax and included the appellee claimants in these appeals. Both *Oklahoma Gas* cases were decided on June 13, 1989, approximately 2 months after the State Board denied the claimants' requests for refunds in the present case. In both *Oklahoma Gas* cases the plaintiff taxpayers were granted summary judgment "[f]or the reasons stated by the Eighth Circuit in its opinion in <u>Trailer Train Co. v. Leuenberger</u>, [885 F.2d 415 (8th Cir. 1988)] aff'g Trailer Train <u>Co. v. Leuenberger</u>, CV87-L-29 (D. Neb. Dec. 11, 1987)," and the Tax Commissioner was ordered to refund taxes paid by the car companies for the 1987 and 1988 tax years.

We said in *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 835, 458 N.W.2d 443, 455 (1990), that "as a subject for judicial notice, existence of court records and certain judicial action reflected in a court's record are, in accordance with Neb. Evid. R. 201(2)(b), facts which are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." A court may, therefore, judicially notice existence of its records and the records of another court, but judicial notice of facts reflected in a court's records is subject to the doctrine of collateral estoppel or of res judicata. *Gottsch, supra*.

In light of the foregoing, we conclude that the record in this court consists of (1) the transcripts and bill of exceptions of the proceedings before the State Board and (2) the exhibits offered in the district court which may be judicially noticed by this

court, that is, all the exhibits except exhibit 11. We therefore review the record de novo, pursuant to § 84-918(2) (Cum. Supp. 1990), and consider the materials offered in the district court to the extent they are relevant to the issues involved in this appeal.

## II

We also note that §§ 77-1775 and 77-1736.04 were repealed and reenacted after the claimants perfected their appeals to the district court. The statutes, as amended, still set forth procedures for refunding property taxes.

In the absence of a general saving statute, the repeal without reservation of a statute granting a right of action is generally construed to defeat all remedies provided thereunder and to defeat all actions pending under the statute at the time of repeal. 82 C.J.S. *Statutes* §§ 439 and 440 (1953). However, Nebraska has enacted a general saving statute, Neb. Rev. Stat. § 49-301 (Reissue 1988), which provides that the repeal of a statute "shall in no manner affect pending actions founded thereon . . . except as may be provided in such repealing statute." In any event,

> [t]he simultaneous repeal and reenactment of substantially the same statutory provisions is ordinarily construed to be an affirmation or continuation of the original provisions rather than a true repeal. Where a statute has been repealed and substantially reenacted with additions or changes, the additions or changes are treated as amendments effective from the time the new statute goes into effect.

*Denver Wood Products Co. v. Frye,* 202 Neb. 286, 289, 275 N.W.2d 67, 70 (1979). We determine, therefore, that the repeal and reenactment of §§ 77-1775 and 77-1736.04 did not defeat the claimants' remedies and that the cases should be decided under the statutes existing at the time the actions were commenced.

## III

Section 306 of the 4-R Act was enacted in 1976 " 'to eliminate the long-standing burden on interstate commerce resulting from discriminatory State and local taxation of common and contract carrier transportation property.' "

*Ogilvie v. State Bd. of Equalization*, 657 F.2d 204, 206 (8th Cir. 1981). As noted by Judge Robert Van Pelt in *Ogilvie*, the legislative history of the 4-R Act shows that, in the 1959-60 session, the 86th Congress passed Senate resolutions 29, 151, and 244 requesting a national transportation policy study. The portion of the resulting report pertaining to ad valorem property taxation of railroads related that information compiled by the Association of American Railroads confirmed the finding of the congressional committee that there was a " 'studied and deliberate practice of assessing railroad property at a proportion of full value substantially higher than other property subject to the same tax rates.' " 657 F.2d at 206. The committee proposed two plans to help alleviate the tax burden on railroads. One was a right-of-way exemption. The other proposal submitted by the Association of American Railroads formed the basis for § 306 of the 4-R Act when it was enacted by the 94th Congress approximately 15 years later. See *Ogilvie, supra*.

In the 94th Congress, the House and the Senate introduced separate versions of the bill. The difference between the two versions was that the Senate bill provided that any state having in its constitution a "reasonable classification of property" provision would be exempt from the act. The House rejected this proviso as an amendment to its bill. In the debate, it was argued that such a constitutional provision was a form of discrimination in that the constitutions of approximately 19 states contained such a provision. Critics also argued that there was nothing to prevent other states from amending their constitutions before the bill took effect and that such action would defeat the bill's purpose. A conference committee ultimately recommended the adoption of what was substantially the original Senate bill, minus the constitutional exemption provision. This bill passed, in 1976, and became § 306 and was to take effect 3 years after enactment. See *Ogilvie, supra*.

Section 77-1775 was enacted in 1983 as part of L.B. 193 in response to the passage of § 306 of the 4-R Act and in anticipation of lawsuits filed pursuant thereto. For example, Tax Commissioner Donna Karnes testified before the

Committee on Revenue that

> [f]ederal legislation was recently enacted to correct the discriminatory taxation of such property in many states. In the case of railroads, this legislation is known as the Federal 4-R Act . . . . Basically, these acts require that such property be taxed at a rate that does not exceed the rate of taxation for commercial and industrial property in the same taxing jurisdiction. For Nebraska this means that the actual assessed value of this property must be adjusted by the statewide average assessment sales ratio for commercial and industrial property. It should be noted that the railroads are now suing other states under this federal legislation and the airlines can be expected to follow suit.
>
> Under current Nebraska law, airline and carline properties are taxed at a rate which is equal to the average statewide property tax rate for the preceding tax year. This is not true of any other types of property taxed in Nebraska. Recent case law from other jurisdictions indicates that this type of treatment can be a discriminatory and therefore illegal taxation practice under the new federal laws. This would be true where the preceding year's commercial and industrial property tax rate was higher than the present year's tax rate. So if this situation existed in Nebraska, the current state law could be challenged and found in violation of these new federal acts and the United States Constitution. This is exactly what has occurred in other states with similar provisions and this is why these changes proposed by the Department [of Revenue] are necessary.

Committee on Revenue Hearing, L.B. 193, 88th Leg., 1st Sess. 13-14 (Jan. 24, 1983).

Section 77-1775 provides that if a taxpayer demands a refund from the Tax Commissioner, the Tax Commissioner must "immediately" transmit a copy of the demand, along with the Tax Commissioner's recommendation, to the State Board. The State Board "shall approve the refund if the board finds the tax . . . to be invalid for any reason" and must make its determination within 120 days of filing the claim for refund. If

the refund claim is denied, the taxpayer may appeal to the district court pursuant to the Administrative Procedure Act. If it is determined that the tax was invalid, judgment shall be rendered in the amount of the refund claim with interest.

The district court found that the car company personal property taxes paid by the claimants for tax year 1986 were "invalid" within the meaning of § 77-1775 in light of the decisions in *Trailer Train Co. et al. v. Leuenberger*, No. CV87-L-29 (D. Neb. Dec. 11, 1987), *aff'd* 885 F.2d 415 (8th Cir. 1988), *cert. denied, Boehm v. Trailer Train Co.*, 490 U.S. 1066, 109 S. Ct. 2065, 104 L. Ed. 2d 630 (1989), and *Northern Natural Gas Co. v. State Bd. of Equal.*, 232 Neb. 806, 443 N.W.2d 249 (1989), *cert. denied* ____ U.S. ____, 110 S. Ct. 1130, 107 L. Ed. 2d 1036 (1990).

The appellants contend that the taxes levied on the claimants' property pursuant to §§ 77-624 et seq. were not "invalid" within the meaning of § 77-1775 because the taxation of the claimants' property was not for an illegal or unauthorized purpose and was not void for want of jurisdiction to impose the tax. Indeed, the decision in *Trailer Train Co. et al. v. Leuenberger, supra*, did not prohibit the State of Nebraska from levying lawful taxes on railroad rolling stock, although collection of a "discriminating tax" was enjoined in federal court. See, also, *MAPCO Ammonia Pipeline v. State Bd. of Equal., ante* p. 565, 471 N.W.2d 734 (1991); *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 466 N.W.2d 461 (1991); *Northern Natural Gas Co. v. State Bd. of Equal., supra*. Even assuming that the taxation of railroad rolling stock was not void ab initio, we conclude that the 1986 personal property taxes in question were collected from the claimants in violation of federal law and are "invalid" within the meaning of § 77-1775.

Section 306 of the 4-R Act provides:

(1) . . . It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:

. . . .

(d) The imposition of any other tax which results in

discriminatory treatment of a common carrier by railroad subject to this part.

We have referred to the text of the original 4-R Act instead of the codification appearing at 49 U.S.C. § 11503, as did the court in *Trailer Train Co. v. Leuenberger*, 885 F.2d 415 (8th Cir. 1988). As summarized in *Alabama Great Southern R. Co. v. Eagerton*, 663 F.2d 1036, 1037 (11th Cir. 1981),

> 49 U.S.C. § 11503 is an official revision and codification of Pub.L.No. 94-210, Section 306, 90 Stat. 54 (February 5, 1976), which was originally enacted as part of the [4-R Act] and codified unofficially as 49 U.S.C.A. § 26c (1978 Supp.). 49 U.S.C. § 11503 was published as part of Pub.L.No. 95-473, 92 Stat. 1337 (October 13, 1978), which was "an act to revise, codify and enact without substantive change the Interstate Commerce Act and related laws as Subtitle IV, Title 49, United States Code, 'Transportation'." Pursuant to Pub. L. No. 95-473, 92 Stat. 1466, § 3(a), the statutory language of 49 U.S.C. § 11503 cannot be construed as making a substantive change in § 306.

See, also, *Ogilvie v. State Bd. of Equalization*, 657 F.2d 204 (1981). Therefore, since the language of 49 U.S.C. § 11503 differs from the language of § 306 as enacted, we rely on the language used in § 306.

As we have noted in previous decisions, the U.S. Court of Appeals, in *Trailer Train Co. v. Leuenberger, supra*, held that when tax exemptions applied to three-fourths of the commercial and industrial property in Nebraska, and did not apply to rail cars, the tax system in Nebraska discriminated against Trailer Train in violation of § 306(1)(d) of the 4-R Act. For that reason, in *Trailer Train Co.*, the State of Nebraska was enjoined from "collection of the discriminating tax," 885 F.2d at 418, but was not prohibited from levying a lawful nondiscriminatory tax on a common carrier by railroad.

In *Northern Natural Gas Co. v. State Bd. of Equal., supra*, *Natural Gas Pipeline Co. v. State Bd. of Equal., supra*, *MAPCO Ammonia Pipeline v. State Bd. of Equal., supra*, and several related cases, this court considered the contentions of nonrailroad centrally assessed taxpayers that the decision in

*Trailer Train Co.* entitled them to relief under Neb. Const. art. VIII, § 1. In holding that these taxpayers were entitled to relief, we recognized that the impermissible discrimination forming the basis for the decision in *Trailer Train Co.* and other federal court decisions interpreting and applying the 4-R Act resulted solely from tax exemptions provided under Neb. Rev. Stat. § 77-202(6) through (9) (Reissue 1990) to various types of property not owned by railroads or car companies. In *MAPCO Ammonia Pipeline, supra* at 583, 471 N.W.2d at 745, we specifically observed that "Nebraska's failure to correct *illegal discrimination* in its tax structure has caused an increasing concentration of the tax burden on a shrinking group of taxpayers." (Emphasis supplied.)

In our decisions following *Trailer Train Co., supra,* this court has consistently interpreted the discriminatory taxation of railroad rolling stock to be in violation of federal law. The railroad rolling stock owned by the claimants in these cases was taxed in 1986 under the same illegally discriminatory tax system that was at issue in *Trailer Train Co., Northern Natural Gas Co., Natural Gas Pipeline Co.,* and *MAPCO Ammonia Pipeline.* Section 77-1775 specifically provides for the refund of "invalid" taxes. We hold that the tax levied in 1986 against the rolling stock of the claimants in these cases was in violation of § 306(1)(d) of the 4-R Act and was invalid within the meaning of § 77-1775. The district court, therefore, did not err in ordering that said taxes be refunded with interest pursuant to § 77-1775.

### IV

Because we determine the claimants are entitled to refunds of personal property taxes for 1986 pursuant to § 77-1775, we need not address the appellants' contentions regarding § 77-1736.04.

### V

Finally, the claimants contend they are entitled to an award for reasonable attorney fees pursuant to Neb. Rev. Stat. § 25-824 (Reissue 1989) "for the defenses raised by the appellants that are frivolous." Brief for appellees at 49. We do not believe the defenses raised by the State Board and Tax

Commissioner were frivolous or made in bad faith, and we decline to award attorney fees in this case.

The judgment of the district court is affirmed.

AFFIRMED.

WHITE, J., not participating in the decision.