Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/15/2022 08:06 AM CDT

State of Nebraska, appellee, v.
Seidy N. Albarenga, appellant.

___ N.W.2d ___

Filed March 8, 2022.    No. A-21-213.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
2. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.
3. **Judges: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
4. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
5. **Statutes.** When reading a statute, what it does not say is often as important as what it does say.
6. ____. A court does not examine statutes in isolation; rather, all statutes in pari materia must be taken together and construed as if they were one law.
7. **Statutes: Legislature: Intent.** In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.
8. **Administrative Law: Judicial Notice: Appeal and Error.** Because establishing the existence and contents of a particular administrative rule or regulation at any given time is often a difficult and uncertain process, it is an established principle that, as a general rule, Nebraska appellate courts will not take judicial notice of administrative rules or regulations.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Appellate courts will take judicial notice of general rules and regulations established and published by Nebraska state agencies under authority of law.

10. **Administrative Law.** Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.

11. \_\_\_\_. Regulations bind the agency that promulgated them just as they bind individual citizens, even if the adoption of the regulations was discretionary.

12. \_\_\_\_. For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute.

13. **Statutes.** To the extent there is a conflict between two statutes, the specific statute controls over the general statute.

Appeal from the District Court for Lancaster County, Andrew R. Jacobsen, Judge, on appeal thereto from the County Court for Lancaster County, Joseph E. Dalton, Judge. Judgment of District Court affirmed.

Joe Nigro, Lancaster County Public Defender, and Nathan Sohriakoff for appellant.

Christine A. Loseke, Assistant Lincoln City Prosecutor, for appellee.

Pirtle, Chief Judge, and Moore and Welch, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

Seidy N. Albarenga appeals from an order of the district court for Lancaster County affirming the county court's decision overruling Albarenga's motion to quash a charge of violating an automatic traffic signal, in violation of Lincoln Mun. Code § 10.12.030 (2017), and her motion to suppress evidence obtained as a result of a traffic stop. For the reasons that follow, we affirm.

## BACKGROUND

The underlying facts of this case are not in dispute. At approximately 3 a.m. on June 28, 2019, an officer of the

Lincoln Police Department observed Albarenga driving eastbound on P Street between 16th and 17th Streets in Lincoln, Nebraska. Albarenga turned northbound on 17th Street, and the officer followed until they both came to a stop in the westernmost lane at the intersection of 17th and Q Streets. At that intersection, 17th Street is a one-way street running north with three lanes and Q Street is a one-way street running west.

Vehicles approaching the intersection on 17th Street face a traffic light with three distinct traffic control devices. The easternmost lane faces a device that displays green, yellow, and red circular indications with a sign directing traffic to proceed straight through only. The middle and westernmost lanes face devices that display green, yellow, and red arrow indications with signs directing traffic to turn left only.

When Albarenga and the officer came to a stop in the westernmost lane, the traffic control device displayed a red arrow indication. After coming to a complete stop, Albarenga turned left without waiting for the red arrow indication to change to green. Shortly thereafter, the officer initiated a traffic stop "[b]ecause [Albarenga] violated the left turn arrow." The officer observed Albarenga to have slurred speech, bloodshot and watery eyes, and an odor of alcohol. Albarenga admitted to consuming alcohol, and field sobriety tests showed signs of impairment. Albarenga was arrested, and a chemical test showed a reading of 0.142 of a gram of alcohol per 210 liters of breath.

On July 3, 2019, a prosecuting attorney for the city of Lincoln filed a criminal complaint against Albarenga in county court, charging her with count 1, driving under the influence, in violation of Lincoln Mun. Code § 10.16.030 (2017), and with count 2, violating an automatic traffic signal, in violation of § 10.12.030. Albarenga entered a plea of not guilty on both counts.

Albarenga filed two pretrial motions: a motion to suppress evidence obtained as a result of the traffic stop and a motion to quash count 2 of the complaint. Both motions revolved

around Albarenga's argument that there is a direct conflict between § 10.12.030 and Neb. Rev. Stat § 60-6,123 (Reissue 2021). The county court found no conflict between § 10.12.030 and § 60-6,123 and overruled both the motion to suppress and the motion to quash at respective hearings thereon.

In March 2020, the county court convened for a stipulated bench trial on the criminal complaint. Albarenga renewed her pretrial motions, and the court took the matter under advisement. On April 27, the county court entered an order again finding no conflict between the ordinance and the statute and overruling Albarenga's renewed motions. The court reasoned as follows:

> Defense counsel argues that the City Ordinance is in conflict with the State Statute. The Court disagrees. The City Ordinance makes it illegal to turn left when the traffic control device is illuminated with a red arrow. This is exactly the exception to [§ 60-6,123(3)(c)] which provides, "Except where a traffic control device is in place prohibiting a turn". The traffic control devices in place at the intersection of 17th and Q streets for Northbound traffic in the furthest left or west two lanes display arrows only. Under the Lincoln Municipal Ordinance, one must stop and remain stopped as long as the arrow is red. . . . The Court finds that there are different traffic signal devices governing stopping, one utilizes a round red light and one which utilizes a red arrow. These two signal devi[c]es have different rules. They are not in conflict with each other.

The court ultimately found Albarenga guilty on both counts of the complaint and issued sentences accordingly.

Albarenga appealed to the district court, assigning that the county court erred in (1) finding no conflict between § 10.12.030 and § 60-6,123, (2) overruling the motion to suppress, and (3) overruling the motion to quash. On February 12, 2021, the district court entered an order affirming the county court's judgment "in all respects." This appeal followed.

## ASSIGNMENTS OF ERROR

Albarenga assigns, restated, that the district court erred in (1) affirming the county court's finding of no conflict between § 10.12.30 and § 60-6,123, (2) affirming the county court's decision overruling Albarenga's motion to suppress, and (3) affirming the county court's decision overruling Albarenga's motion to quash.

## STANDARD OF REVIEW

[1] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016).

[2,3] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

[4] Albarenga first assigns that the district court erred in affirming the county court's finding of no conflict between § 10.12.030 and § 60-6,123. Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *State v. Thompson, supra*. The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent. *Id.*

Count 2 of the criminal complaint charged Albarenga with violating § 10.12.030. In pertinent part, § 10.12.030 provides as follows: "RED ARROW: Vehicular traffic facing a lighted steady red arrow shall stop before entering the crosswalk on the near side of the intersection and remain stopped until a green light is displayed, except as otherwise permitted in this title." In addition, Lincoln Mun. Code § 10.14.220 (2017) provides in part as follows:

Except where a traffic control device is in place prohibiting a turn or a steady red arrow signal indication is displayed, the operator of a vehicle traveling on a one-way street facing a steady circular red signal may, after stopping, cautiously drive such vehicle into the intersection to make a left turn onto another one-way street on which all traffic is moving to said vehicle's left.

There is no dispute that the plain language of §§ 10.12.030 and 10.14.220 prohibits making a left turn on a red arrow indication under the circumstances described therein. Albarenga contends § 10.12.030 conflicts with § 60-6,123 because she interprets § 60-6,123 to permit making a left turn on a red arrow indication under the same circumstances. Section 60-6,123 provides as follows:

Whenever traffic is controlled by traffic control signals exhibiting different colored lights or colored lighted arrows, successively one at a time or in combination, only the colors green, red, and yellow shall be used, except for special pedestrian signals carrying a word legend, number, or symbol, and such lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

(1)(a) Vehicular traffic facing a circular green indication may proceed straight through or turn right or left unless a sign at such place prohibits either such turn, but vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such indication is exhibited;

(b) Vehicular traffic facing a green arrow indication shown alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow or such other movement as is permitted by other indications shown at the same time, and such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent

crosswalk and to other traffic lawfully using the intersection; and

. . . .

(3)(a) Vehicular traffic facing a steady red indication alone shall stop at a clearly marked stop line or shall stop, if there is no such line, before entering the crosswalk on the near side of the intersection or, if there is no crosswalk, before entering the intersection. The traffic shall remain standing until an indication to proceed is shown except as provided in subdivisions (3)(b) and (3)(c) of this section;

(b) Except where a traffic control device is in place prohibiting a turn, vehicular traffic facing a steady red indication may cautiously enter the intersection to make a right turn after stopping as required by subdivision (3)(a) of this section. Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection;

(c) Except where a traffic control device is in place prohibiting a turn, vehicular traffic facing a steady red indication at the intersection of two one-way streets may cautiously enter the intersection to make a left turn after stopping as required by subdivision (3)(a) of this section. Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection[.]

The central dispute on appeal, as it was before the county and district courts, is the proper interpretation of § 60-6,123(3)(c) above. For clarity's sake, we divide § 60-6,123(3)(c) into two distinct clauses. The second clause contains the general rule that vehicular traffic facing a "steady red indication" may, after stopping, turn left at an intersection of two one-way streets. The first clause contains an exception to the general rule, prohibiting such a turn when there is "a traffic control device" to that effect.

The county court found, and the district court agreed, that a red arrow indication constitutes "'a traffic control device . . . prohibiting a turn[,]'" such that the exception in the first clause was dispositive. Albarenga, on the other hand, argues that the term "steady red indication" refers generally to both circular and arrow indications such that the general rule applies equally to both. Thus, Albarenga contends, the interpretation adopted by the county and district courts results in the exception swallowing the rule, because it erroneously equates a steady red indication with a traffic control device prohibiting a turn. In other words, Albarenga advocates for a single rule which permits making a left turn under the circumstances described in § 60-6,123, regardless of whether the steady red indication is an arrow or a circle.

[5] We begin by acknowledging the logic of Albarenga's argument. Section 60-6,123 as a whole demonstrates the Legislature's awareness of both circular and arrow indications. The introductory clause refers to both "colored lights" and "colored lighted arrows." Section 60-6,123(1)(a) refers to "a circular green indication," and § 60-6,123(1)(b) refers to "a green arrow indication." Yet, subsections (3)(a) and (3)(c) of § 60-6,123 refer generally to "a steady red indication" without distinguishing between red arrow and red circular indications. "When reading a statute, what it *does not say* is often as important as what it *does say*." *Robinson v. Houston*, 298 Neb. 746, 751, 905 N.W.2d 636, 640 (2018) (emphasis in original). Thus, we agree with Albarenga that § 60-6,123, when read in isolation, suggests that the term "steady red indication" refers generally to both red arrow and red circular indications. However, our analysis does not end there.

[6,7] We do not examine statutes in isolation; rather, all statutes in pari materia must be taken together and construed as if they were one law. See *State v. Jedlicka*, 305 Neb. 52, 938 N.W.2d 854 (2020). In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which

it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately. *Id.*

Section 60-6,123 is just one section of the Nebraska Rules of the Road. See Neb. Rev. Stat. §§ 60-601 to 60-6,383 (Reissue 2021). Section 60-602 declares, in pertinent part, that the Legislature's purpose in enacting the rules was to "make more uniform highway traffic laws between states[,] increase the efficiency of streets and highways by the application of uniform traffic control devices[, and] assist law enforcement by encouraging voluntary compliance with law through uniform rules." Moreover, § 60-604 provides that "[t]he Nebraska Rules of the Road shall be so interpreted and construed as to effectuate their general purpose to make uniform the laws relating to motor vehicles." In furtherance of uniformity, § 60-6,118 provides as follows:

> Consistent with the provisions of the Nebraska Rules of the Road, the Department of Transportation may adopt and promulgate rules and regulations adopting and implementing a manual providing a uniform system of traffic control devices on all highways within this state which, together with any supplements adopted by the department, shall be known as the Manual on Uniform Traffic Control Devices.

Pursuant to § 60-6,118, Nebraska's Department of Transportation (NDOT) has adopted the Manual on Uniform Traffic Control Devices (2009) (Manual), see 411 Neb. Admin. Code, ch. 1, § 001 (2019), which is filed with the Secretary of State of Nebraska.

[8] However, the NDOT regulation adopting the Manual was not offered into evidence or judicially noticed by the county court. Thus, neither the regulation nor the Manual itself appear in the appellate record. Because establishing the existence and contents of a particular administrative rule or regulation at any given time is often a difficult and uncertain process, it is an

established principle that, as a general rule, Nebraska appellate courts will not take judicial notice of administrative rules or regulations. See, *Central Platte NRD v. State of Wyoming*, 245 Neb. 439, 513 N.W.2d 847 (1994); *Dairyland Power Co-op v. State Bd. of Equal.*, 238 Neb. 696, 472 N.W.2d 363 (1991); *Donahoo v. Nebraska Liquor Control Comm.*, 229 Neb. 197, 426 N.W.2d 250 (1988).

[9] On the other hand, the Nebraska Supreme Court has held that appellate courts will take judicial notice of general rules and regulations established and published by Nebraska state agencies under authority of law. *City of Lincoln v. Central Platte NRD*, 263 Neb. 141, 638 N.W.2d 839 (2002). We find that the Manual constitutes a general rule or regulation established and published by NDOT under authority of law. Thus, we take judicial notice of the Manual to the extent it is relevant to our analysis of the purported conflict between § 10.12.030 and § 60-6,123.

As it pertains to this appeal, the Manual provides as follows:

C. Steady red signal indications shall have the following meanings:

1. Vehicular traffic facing a steady CIRCULAR RED signal indication, unless entering the intersection to make another movement permitted by another signal indication, shall stop . . . and shall remain stopped until a signal indication to proceed is displayed, or as provided below.

Except when a traffic control device is in place prohibiting a turn on red or a steady RED ARROW signal indication is displayed, vehicular traffic facing a steady CIRCULAR RED signal indication is permitted to enter the intersection to turn right, or to turn left from a one-way street into a one-way street, after stopping. . . .

2. Vehicular traffic facing a steady RED ARROW signal indication shall not enter the intersection to make the movement indicated by the arrow and, unless entering the intersection to make another movement permitted by another signal indication, shall stop . . . and shall

remain stopped until a signal indication or other traffic control device permitting the movement indicated by such RED ARROW is displayed.

When a traffic control device is in place permitting a turn on a steady RED ARROW indication, vehicular traffic facing a steady RED ARROW signal indication is permitted to enter the intersection to make the movement indicated by the arrow signal indication, after stopping.

§ 4D.04, ¶ 3, items C.1 & C.2. The Manual further provides that "[e]xcept as described in Item C.2 in Paragraph 3 of Section 4D.04, turning on a steady RED ARROW signal indication shall not be permitted." § 4D.05, ¶ 3, item D. The plain language of the Manual makes clear that a red arrow indication is intended to prohibit the movement indicated by the arrow unless there is "a traffic control device . . . in place permitting a turn on a steady RED ARROW signal indication." § 4D.04, ¶ 3, item C.2.

[10-13] As previously noted, the Manual was adopted by NDOT pursuant to § 60-6,118 and codified at 411 Neb. Admin. Code, ch. 1, § 001 (2019). Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law. *Melanie M. v. Winterer*, 290 Neb. 764, 862 N.W.2d 76 (2015). Such regulations bind the agency that promulgated them just as they bind individual citizens, even if the adoption of the regulations was discretionary. *Id.* For purposes of construction, a rule or regulation of an administrative agency is generally treated like a statute. *Id.* To the extent there is a conflict between two statutes, the specific statute controls over the general statute. *Davio v. Nebraska Dept. of Health & Human Servs.*, 280 Neb. 263, 786 N.W.2d 655 (2010).

We observe that the Manual is more specific than § 60-6,123 with regard to red arrow indications such that, to the extent § 60-6,123 conflicts with the Manual, the Manual is the controlling law. Construing the Nebraska Rules of the Road together as one law, we determine the Legislature intended red arrow indications to have the meaning and effect described

at length in the Manual. Having reviewed the relevant sections of the Manual, we conclude that the language of §§ 10.12.030 and 10.14.220 is wholly consistent with Nebraska law on red arrow indications. We also agree with the county and district courts that red arrow and red circular indications are subject to different nonconflicting rules. Accordingly, we reject Albarenga's argument to the contrary and adopt the interpretation of § 60-6,123 adopted by the county and district courts. That is, for purposes of § 60-6,123(3)(c), a red arrow indication constitutes a traffic control device prohibiting a turn. Thus, we find no conflict between § 10.12.030 and § 60-6,123, and we affirm the order of the district court, affirming the county court's finding, with respect to Albarenga's first assignment of error.

Albarenga's second and third assignments of error pertain to the county court's decision overruling her motion to suppress and motion to quash respectively. With respect to the motion to suppress, Albarenga argues the alleged conflict between § 10.12.030 and § 60-6,123 rendered § 10.12.030 unenforceable and therefore undermined the reasonable suspicion necessary to initiate a traffic stop. With respect to the motion to quash, Albarenga argues the alleged conflict rendered § 10.12.030 unenforceable under principles of preemption. Because we find no conflict between § 10.12.030 and § 60-6,123, Albarenga's second and third assignments of error are without merit. Therefore, we affirm the order of the district court, affirming the county court's decisions, with respect to Albarenga's second and third assignments of error.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order on appeal affirming the county court's judgment.

AFFIRMED.