IN RE APPLICATION OF OVERLAND ARMORED EXPRESS OF LINCOLN, INC.
OVERLAND ARMORED EXPRESS OF LINCOLN, INC., APPELLANT, V. WELLS FARGO ARMORED SERVICE CORP., APPELLEE.

428 N.W.2d 166

Filed August 19, 1988.   No. 86-853.

Robert M. Zuber, of Zuber & Ginsburg, for appellant.

Richard A. Peterson, of Peterson Nelson Johanns Morris & Holdeman, for appellee.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ., and JOHN MURPHY, D.J.

GRANT, J.

This is an appeal from an order of the Nebraska Public Service Commission. On September 16, 1986, the commission denied the motion for rehearing and/or reconsideration filed by appellant, Overland Armored Express of Lincoln, Inc., and affirmed its earlier order denying the application filed by Overland. Overland's application sought the issuance of a certificate of public convenience and necessity granting Overland authority to transport coin, currency, and negotiable securities between points in Nebraska on irregular routes as a common carrier. Overland appeals, contending that the commission erred (1) in finding that Overland was not fit, willing, and able to perform the service; (2) in finding that there was no distinct need for the type of service offered by Overland which could not be met by common carriers; (3) in failing to find that public convenience and necessity required a grant of Overland's application; and (4) in refusing to admit supporting evidence offered by Overland, under Neb. Admin. Code tit. 291, ch. 1, § 016.015 (1985). We affirm.

The record shows that Overland filed its application on March 20, 1986. Testimony at the hearing showed that Overland desired to provide services on Tuesday and Thursday of each week between Omaha and Lincoln to financial institutions currently served by appellee, Wells Fargo Armored Service Corp., on Tuesday only. On April 9, 1986, Wells Fargo filed a protest alleging that Wells Fargo was currently providing service in the territory Overland sought to serve, that there was no public need for the service offered by Overland, and that Wells Fargo was prepared to provide additional services should there be a public demand or need for such additional services.

At the hearing on July 2, 1986, Overland presented the testimony of three witnesses. Max Rupe, the president of Overland, testified that Overland has been operating in Lincoln since 1978 and that Overland would be able to provide transportation to and from the Federal Reserve Bank in Omaha between Omaha and Lincoln on both Tuesday and Thursday of each week. None of Overland's income statements or profit and loss statements were introduced into evidence. While a balance sheet from Overland was apparently attached to Overland's

application, the balance sheet has not been made a part of the record on appeal. Overland's president did testify that the balance sheet showed one asset, described as accounts receivable, in an estimated account of $10,000, and no liabilities; that Overland had no checking account balance, no overdrafts, and no other assets such as automotive or office equipment; and that all the money it collects from its customers is endorsed over to Overland Armored Express of Omaha, which pays all of Overland's bills, including taxes and wages due. Rupe further testified that Overland is associated with Overland of Omaha, but did not testify to the particulars of that association. Rupe also testified that Overland uses one armored truck in its Lincoln operation and that Overland subleases that truck from Overland of Omaha, which leases the truck from Elliott Construction Company.

Rupe testified that Elliott Construction Company of Fremont, Nebraska, would provide "financial resources" to Overland. A letter addressed to the Public Service Commission and signed by the president of Elliott was offered in evidence. This letter advised the commission that the construction company "pledges its financial resources [to Overland] for equipment and working capital." Elliott's December 31, 1985, financial statement was also offered in evidence. Wells Fargo made hearsay objections to both of these documents. The objections were sustained by the commission's hearing examiner.

An operations officer in charge of the electronic banking department and teller operations at Gateway Bank in Lincoln testified for Overland. This witness testified that Wells Fargo was currently transporting cash for the bank from the Federal Reserve Bank in Omaha to Lincoln on Tuesday of each week. The witness testified that the bank was in need of an additional service on Thursday of each week and that the bank would "consider" using Overland for this service. The witness further testified that although she had had conversations with an employee of Wells Fargo concerning the possibility of providing the additional Thursday service, she had made no formal request to Wells Fargo for the additional Thursday service.

A vice president for First Federal Savings and Loan Association of Lincoln testified that Wells Fargo was currently providing services to First Federal on Tuesday of each week. The witness testified that First Federal had not yet determined that service on both Tuesday and Thursday was necessary, but that in the event such a determination was made, First Federal would "consider" using Overland's services for the Thursday run. The witness further testified that no formal request had been made to Wells Fargo to provide the additional Thursday service.

Larry Holmes, branch manager for Wells Fargo, was the only witness called by Wells Fargo. He testified that he was unaware of any requests by either Gateway Bank or First Federal to provide the additional Thursday service. Holmes testified that in the event such a request was made, however, Wells Fargo was prepared to provide the Thursday service for both institutions.

On August 5, 1986, the commission denied Overland's application, determining that Overland was "not fit, willing, and able properly to perform the service proposed" and that public convenience and necessity did not require that Overland's application be granted. On September 16, 1986, the commission denied Overland's motion for rehearing and/or reconsideration and affirmed its earlier decision. This appeal follows.

In its first assignment of error, appellant contends that the commission erred in finding that Overland was not fit, willing, and able to perform the service. In an appeal from an order of the Public Service Commission, this court examines the record to determine whether the commission acted within the scope of its authority and whether the evidence shows that the order in question was unreasonable or arbitrary. If there is evidence to sustain the findings and action of the commission, this court cannot intervene. *In re Application of Renzenberger, Inc.*, 225 Neb. 30, 402 N.W.2d 294 (1987).

Overland contends that there was sufficient evidence at the hearing to demonstrate that Overland is fit, willing, and able to perform the services of a common carrier. In its reply brief at 5, Overland states, "The burden of coming forward with evidence

that Overland was not fit was on Wells Fargo once Overland demonstrated fitness. It was Wells Fargo who failed in its burden of proof." We do not agree. The burden of proof rests on the applicant for a certificate of public convenience and necessity to show that the applicant meets all the requirements of the statute. *In re Application of Greyhound Lines, Inc.*, 209 Neb. 430, 308 N.W.2d 336 (1981). Neb. Rev. Stat. § 75-311 (Reissue 1986) provides, in part, that a qualified applicant must be "fit, willing, and able properly to perform the service proposed." To comply with that statute, the applicant must prove, in part, that the applicant is fit financially.

While the president of Overland testified generally to conclusions that he would be able to provide adequate insurance for Overland and that he had adequate financial resources to provide service and capitalization, Overland provided no documentary evidence to demonstrate that Overland was in sound financial condition other than the letter and balance sheet of Elliott Construction Company. The proffered evidence was not received and will be discussed below. There is nothing in the record for us to review on the issue of Overland's financial fitness, other than Rupe's testimony set out above. The commission determined Overland was not fit and able. The record before the commission supports that finding. Overland's first assignment of error is without merit.

In its second and third assignments of error, Overland contends that the commission erred in finding there was no distinct need for the type of service offered by Overland which could not be met by common carriers and in finding that public convenience and necessity did not require a grant of the application. The burden of proof is on the applicant, Overland, to prove that the proposed service is or will be required by the present or future public convenience and necessity. *In re Application of Renzenberger, Inc., supra.* The existence of adequate and satisfactory service by carriers already in the area is a complete negation of public need and demand for added service by another carrier. *In re Application of Renzenberger, Inc., supra.*

Overland's potential users testified that they had determined

that it would be "convenient" to have the additional Thursday service offered by Overland. There was no evidence to the effect that the current provider of the Tuesday run, Wells Fargo, would not be able to adequately provide the additional Thursday run if requested to do so. Furthermore, there was no testimony that the institutions would in fact use Overland for the additional Thursday run. Overland's witnesses testified that they would "consider" using Overland if Overland was granted authority to provide the Thursday service. Overland failed to demonstrate that an actual public demand existed which was not based on mere speculation, and which could not be adequately met by an existing carrier if requested to do so. Overland's second and third assignments of error are without merit.

In its fourth assignment of error, Overland contends that the commission erred in refusing to admit supporting evidence offered by Overland, under § 016.01. That rule provides:

> Evidence which is admissible in civil actions under the Revised Statutes of Nebraska will be admissible before the Commission. While the Commission will not be bound to follow the technical rules of evidence, the record will be supported by evidence which possesses probative value commonly accepted by reasonable men in the conduct of their affairs.

The evidence referred to by Overland is Elliott Construction Company's financial statement, dated December 31, 1985, and a "letter of commitment" pledging Elliott's resources to Overland. Overland's contention on appeal is that these documents, had they been admitted into evidence, would have demonstrated Overland's financial fitness.

Overland's contention is without merit. The rule referred to provides that the commission is not bound by technical rules of evidence, but that the "record will be supported by evidence which possesses probative value commonly accepted by reasonable men in the conduct of their affairs." We do not believe that evidence of the nature offered by Overland on this issue would be accepted by reasonable men. Overland offered a typewritten sheet, with a typed letterhead, called a "Financial Statement" of Elliott Construction Company. That statement

showed over $1 million in assets (including $500,604 in cash) and no liabilities. The sheet was signed by a person named as president, who certifies that the statement is true. It does not show that it was prepared by accountants from examination of Elliott's books, nor were the figures explained in any way. Overland's president testified that he had no financial interest in Elliott and that Overland did not intend to have any official of Elliott testify to the financial statement. No evidence was adduced as to the relationship, if any, between Elliott and Overland, other than the fact that Overland subleased a truck from Elliott. The financial statement was not admissible, even under the relaxed rules of the Public Service Commission. Overland has the burden of demonstrating financial fitness. There is no evidence in the record from which this court can determine the amount of financial resources which Overland has available to operate the proposed service, other than Overland's bare assertions that it has estimated accounts receivable of $10,000 from unspecified Lincoln customers and no liabilities. Overland has failed to satisfy its burden, in regard to its own showing of financial stability. Overland's fourth assignment of error is without merit.

There is sufficient evidence, or lack of evidence, to support the commission's order. The commission's denial of appellant's application is affirmed.

AFFIRMED.