JOHN A. FECHT, DIRECTOR, WAREHOUSE DEPARTMENT, NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE, AND SWANTON COOPERATIVE ELEVATOR, APPELLANT, v. THE BUNNELL CO., INC., APPELLEE.

497 N.W.2d 50

Filed March 19, 1993.    No. S-90-506.

Gregory B. Bartels, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

David E. Pavel, of Brodkey & Pavel, P.C., for appellee Bunnell Co.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

2

CAPORALE, J.

Acting upon the complaint of appellee John A. Fecht, director of the Warehouse Department of the Nebraska Public Service Commission, the commission, pursuant to the provisions of the Grain Dealer Act, Neb. Rev. Stat. §§ 75-901 through 75-909 (Reissue 1990), revoked the grain dealer's license held by the defendant-appellee buyer, The Bunnell Co., Inc. This action was taken because of the buyer's failure to pay the appellant seller, Swanton Cooperative Elevator, for corn the latter had sold to the former. Subsequently, the commission denied the seller recourse to the security the buyer had filed, an irrevocable letter of credit. In challenging the denial, the seller asserts, in summary, that the commission erred in determining that it had not been notified in a timely fashion of the buyer's failure to pay. We affirm.

The buyer's president and the seller's manager had known and dealt with each other over a period of 15 years, and they entered into a contract whereunder the seller obligated itself to sell 75,000 bushels of No. 2 yellow corn to the buyer for delivery in January, February, and March 1989. The buyer in turn obligated itself to pay a stated price per bushel.

Delivery of the corn commenced on February 3, 1989, and the seller claims that it demanded payment on March 15, 1989. While the buyer disputes that an actual demand for payment was made on March 15, it agrees that it had ongoing contact with the seller regarding the amount due. At a March 20 meeting called by the buyer, the buyer revealed to the seller that it had suffered financial losses and as a consequence was unable to pay the seller the amount due it.

There then remained between 12,000 and 13,000 bushels to deliver on the contract. Because the buyer could obtain at least a nickel a bushel more for the corn than could the seller, the parties agreed that the buyer would take delivery of and sell the remaining corn and pass the proceeds on to the seller. By March 24, 1989, the seller had delivered all of the 75,000 bushels of corn it had contracted to sell. On June 27, 1989, the buyer paid the seller the proceeds from the sale of the corn the seller had delivered after the March 20 meeting. After giving the buyer credit for that amount, the seller claims a balance due in excess

of the buyer's security.

The buyer remained in contact with the seller regarding the buyer's attempts to revitalize itself and pay the seller; not until December 26, 1989, did the seller send a letter of complaint against the buyer to the commission.

Although in an appeal from the commission this court ordinarily examines the record to determine whether the commission acted within the scope of its authority and whether the evidence establishes that the order in question is not unreasonable or arbitrary, *In re Application of A Touch of Class Limousine, Inc., ante* p. 33, 497 N.W.2d 71 (1993), and *In re Application of Overland Armored Exp.*, 229 Neb. 524, 428 N.W.2d 166 (1988), the issues presented by the assignments of error in this case are controlled by statute. Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the trial court. *Curry v. State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993); *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993).

In discerning the meaning of a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Curry v. State ex rel. Stenberg, supra*; *In re Interest of Powers*, 242 Neb. 19, 493 N.W.2d 166 (1992). In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *Curry, supra*; *Hamilton v. Hamilton*, 242 Neb. 687, 496 N.W.2d 507 (1993); *State v. Chambers*, 242 Neb. 124, 493 N.W.2d 328 (1992). Further, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible. *Smith v. Smith*, 242 Neb. 812, 497 N.W.2d 44

(1993); *In re Interest of M.J.B.*, 242 Neb. 671, 496 N.W.2d 495 (1993).

Section 75-903 requires all grain dealers doing business in this state to be licensed by the commission and further requires that they file with the commission security in a sum equal to 4 percent of the dealer's grain purchases in the preceding license year, but not less than $25,000, the amount filed in this case, nor more than $100,000.

Section 75-905 provides:

(1) Except as provided in subsection (2) of this section, no seller shall have recourse to the grain dealer's security unless the seller:

(a) Demands that payment from the grain dealer be made within ten days of the date the grain dealer takes possession of the seller's grain;

(b) Negotiates any negotiable instrument issued as payment for grain by the grain dealer within ten days of its issuance; and

(c) Notifies the commission within ten days of any apparent loss to be covered under the terms of the grain dealer's security.

(2) When grain is delivered to a grain dealer in multiple shipments comprising one contract, the seller shall not have recourse to the grain dealer's security unless the seller notifies the commission within forty-five days of the date of the first shipment of any apparent loss to be covered under the terms of the grain dealer's security.

Whatever else may be said regarding the time limits set forth in subsection (1) of the foregoing statute, subsection (2) unambiguously provides that with respect to a multiple-shipment contract such as the one at hand, a seller wishing to maintain its right to make a claim against a grain dealer's security must structure the agreement so as to allow completion of the contract within time to recognize and notify the commission of any "apparent loss" prior to the expiration of 45 days from the first shipment. One obvious reason for such a time limit is that without it, a contract for large amounts of grain calling for deliveries over several months would routinely produce the potential for claims over the amount of security

required by the act. In any event, for whatever reason, the time requirement is clear.

The uncontradicted evidence is that the seller did not meet that requirement and delayed notice until more than 9 months after the final delivery. The seller argues, however, that the 45-day time limit was tolled or rendered inoperative by virtue of the buyer's failure to provide it with a proper receipt giving notice of that time limit.

Section 75-904 states: "Each grain dealer . . . upon taking possession of grain from a seller shall issue a receipt to the seller . . . . Such receipt shall show . . . (8) the provisions of section 75-905." The regulations of the commission also require that these provisions be shown in 8-point type or larger. 291 Neb. Admin. Code, ch. 8, § 005.11H (1989).

The buyer admits that it did not furnish the seller a receipt which called attention to the provisions of § 75-905. However, while the buyer's failure to give the seller a proper receipt may have invested the commission with a basis for forfeiting the buyer's security and allowing claims in accordance with the provisions of § 75-906, we do not find, nor are we directed to, any language in the act which provides that the failure of a dealer to give a proper receipt renders null and void the time requirements of § 75-905.

Accordingly, the commission correctly determined that the seller had no recourse to the buyer's security; its order is affirmed.

AFFIRMED.