JOHN A. FECHT, DIRECTOR, WAREHOUSE DEPARTMENT, NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE, V. QUALITY PROCESSING, INC., APPELLEE, AND THOMAS CULLAN AND HARRY CULLAN, DOING BUSINESS AS CULLAN FARMS, ET AL., APPELLANTS.

508 N.W.2d 236

Filed November 19, 1993.   No. S-91-266.

Terry Curtiss, of Curtiss, Moravek & Curtiss, P.C., for appellants.

Don Stenberg, Attorney General, and L. Jay Bartel for appellee Fecht.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

This is an appeal from a modified order determining claims entered by the Nebraska Public Service Commission (PSC) on February 12, 1991. The modified order amended an order determining claims entered by the PSC on August 28, 1990, allowing and disallowing various claims made against the bond of Quality Processing, Inc. (QPI), a licensed grain dealer whose license was revoked by the PSC on April 24, 1990.

Nebraska's Grain Dealer Act requires all licensed grain dealers to post security in the event the grain dealer fails to pay for grain it has purchased and received. Neb. Rev. Stat. § 75-903 (Reissue 1990).

The appellants are producers who sold and delivered dry edible beans to QPI but were not paid. The ·complainant-appellee is John A. Fecht, the director of the Warehouse Department of the PSC.

QPI was obligated by Neb. Rev. Stat. § 75-905 (Reissue 1990) to pay for all grain purchased within 10 days of its receipt. QPI did not do so, but negotiated contracts with the appellants to make payment for the beans at subsequent dates.

On February 27, 1990, Fecht, as director of the PSC's Warehouse Department, filed a complaint and request for temporary suspension of QPI's license pursuant to Neb. Rev. Stat. § 75-903.01 (Reissue 1990). The complaint alleged that QPI was in violation of its grain dealer security because QPI had failed to pay for dry edible beans delivered to it by two producers who had contracts for the purchase of their beans.

On March 2, the PSC examined QPI's records. The examination revealed that in addition to not paying the contracts of the parties listed in the complaint, QPI had failed to make payments due on numerous other contracts for the purchase of edible beans. On March 28, a hearing was held before the PSC concerning the allegations in the complaint. The appellants' attorney presented evidence of their claims and was granted leave to mail further claims at a later date.

Section 75-905 provides:

(1) Except as provided in subsection (2) of this section, no seller shall have recourse to the grain dealer's security unless the seller:

(a) Demands that payment from the grain dealer be made within ten days of the date the grain dealer takes possession of the seller's grain;

(b) Negotiates any negotiable instrument issued as payment for grain by the grain dealer within ten days of its issuance; and

(c) Notifies the commission within ten days of any apparent loss to be covered under the terms of the grain dealer's security.

(2) When grain is delivered to a grain dealer in multiple shipments comprising one contract, the seller shall not have recourse to the grain dealer's security unless the seller notifies the commission within forty-five days of the date of the first shipment of any apparent loss to be covered under the terms of the grain dealer's security.

The appellants' claims were denied by the PSC because they were not presented to the PSC within 10 days of the date the appellants' contracts for payment became due and were not paid.

The appellants contend the PSC erred in its determination as to when their apparent losses occurred and in allowing some, but not all, claims discovered in its investigation of QPI made on March 2, 1990.

Although in an appeal from the commission this court ordinarily examines the record to determine whether the commission acted within the scope of its authority and whether the evidence establishes that the order in question is not unreasonable or arbitrary, *In re Application of A Touch of Class Limousine, Inc., ante* p. 33, 497 N.W.2d 71 (1993), and *In re Application of Overland Armored Exp.*, 229 Neb. 524, 428 N.W.2d 166 (1988), the issues presented by the assignments of error in this case are controlled by statute. Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the trial court. *Curry v.*

*State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993); *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993).

*Fecht v. The Bunnell Co.*, 243 Neb. 1, 3, 497 N.W.2d 50, 52 (1993).

In the *Bunnell Co.* case, this court affirmed the PSC's determination that a claim filed by the seller of grain to The Bunnell Co. was untimely because the seller failed to provide the PSC notice of its apparent loss within 45 days of the date it first shipped grain to The Bunnell Co., as provided in § 75-905(2).

In the present case, the plain language of § 75-905(1)(c) requires that in order for a seller to have recourse to a grain dealer's security, the PSC must have notice of any apparent loss to the seller within 10 days of such loss. Without deciding whether coverage existed in the first instance, we note that in any event, a claim was not filed within 10 days of an apparent loss.

In the *Bunnell Co.* case, the grain dealer made similar promises to the seller; however, the evidence was uncontroverted that the seller did not furnish the PSC with notice within 45 days of its first shipment of grain, and this court held that the PSC correctly determined that the seller had no recourse to the grain dealer's security.

In the present case, the PSC did not err in its determination that in order for the appellants to have recourse to QPI's security, they were required to provide notice to the PSC of their apparent loss within 10 days of the dates their contracts became due but were not paid. "The key to coverage of the grain dealer's bond is a breach of the duty to pay . . . ." *Department of Agriculture v. Ackerman*, 34 Ill. App. 3d 796, 798, 341 N.E.2d 48, 50 (1975). In *Stock v. Meissner*, 209 Neb. 636, 309 N.W.2d 86 (1981), this court held that a cause of action against a grain dealer or its surety accrues when the seller has the right to make demand for payment.

In this case, the evidence is uncontradicted that the appellants failed to notify the PSC of QPI's failure to pay their contracts within 10 days of their due dates. Accordingly, the PSC did not err in denying the appellants recourse to QPI's

security because of their failure to timely notify the PSC of their claims.

The appellants argue that the PSC erred in using the date of its examination of QPI's records, March 2, 1990, as the date upon which it had notice of apparent loss in allowing or disallowing various claims. The appellants contend the PSC should have used the date on which it temporarily suspended QPI's grain dealer license, February 27, 1990, as the date it received notice of the various claimants' apparent losses.

The PSC temporarily suspended QPI's license on February 27 based on the complaints of two grain sellers. The PSC had no notice of any other sellers' apparent losses until it actually inspected QPI's records on March 2 and discovered QPI's failure to make timely payment on contracts for grain it had purchased. The PSC did not act arbitrarily in disallowing the appellants' claims because the appellants' 10-day notification period had already expired on March 2, when the inspection took place.

The PSC's modified order determining claims is supported by the record and is affirmed.

AFFIRMED.