IN RE APPLICATION OF JANTZEN.
HENRY AND VERN JANTZEN, APPELLEES, V. DILLER TELEPHONE
COMPANY, APPELLANT.
511 N.W.2d 504

Filed February 4, 1994.    No. S-92-038.

Jack L. Shultz and Gregory D. Barton, of Harding & Ogborn, for appellant.

Henry and Vern Jantzen, pro se.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

The protestant-appellant, Diller Telephone Company, challenges the third and last order of the Public Service Commission (PSC), which granted the request of the applicants-appellees, Henry Jantzen and Vern Jantzen, father and son, to receive telephone service from Lincoln Telephone and Telegraph Company rather than from Diller Telephone, and ordered the Jantzens to pay Diller Telephone $338.91 to cover the latter's loss of investment. On appeal to the Nebraska Court of Appeals, Diller Telephone assigned as errors, in summary, (1) the PSC's consideration of certain evidence in concluding that the Jantzens are not receiving and would not within a reasonable time receive reasonably adequate telephone service, and (2) the arbitrary and capricious nature of its third order.

The Court of Appeals determined that Diller Telephone's failure to timely file its protest waived its opposition to the application and that it was thus precluded from participating in the proceedings before the PSC. Accordingly, the Court of Appeals, without reaching Diller Telephone's summarized assignments of error, directed the PSC to reinstate its first order, which had granted the application upon the payment of Diller Telephone's loss of investment of $97.21 and a connection charge to Lincoln Telephone.

Diller Telephone thereafter successfully petitioned this court for further review. We affirm the judgment of the Court of Appeals, as modified.

## II. SCOPES OF REVIEW

In an appeal from the PSC, an appellate court examines the record to determine whether the PSC acted within the scope of its authority and whether the evidence establishes that the order in question is not unreasonable or arbitrary. *Fecht v. Quality Processing*, 244 Neb. 522, 508 N.W.2d 236 (1993); *Fecht v. The Bunnell Co.*, 243 Neb. 1, 497 N.W.2d 50 (1993); *In re Application of George Farm Co.*, 233 Neb. 23, 443 N.W.2d 285 (1989).

Moreover, in reviewing a decision of the PSC, it is not the province of an appellate court to weigh or resolve conflicts in the evidence or the credibility of the witnesses; rather, an appellate court will sustain the decision of the PSC if there is evidence in the record to support its findings. *In re Application of Kilthau*, 236 Neb. 811, 464 N.W.2d 162 (1991); *In re Application of Slack*, 234 Neb. 704, 452 N.W.2d 538 (1990); *In re Application of Overland Armored Exp.*, 229 Neb. 524, 428 N.W.2d 166 (1988). Of course, the evidence must be competent and relevant. See, *Hoesly v. State*, 243 Neb. 304, 498 N.W.2d 571 (1993); *Geringer v. City of Omaha*, 237 Neb. 928, 468 N.W.2d 372 (1991); *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991); *Chicago & N. W. Ry. Co. v. City of Norfolk*, 157 Neb. 594, 60 N.W.2d 662 (1953).

For purposes of reviewing an order of an administrative agency, competent evidence means evidence which tends to establish the fact in issue. *Wagner v. City of Omaha, supra*;

*Shepherd v. City of Omaha*, 194 Neb. 813, 235 N.W.2d 873 (1975), *overruled on other grounds, Caniglia v. City of Omaha*, 210 Neb. 404, 315 N.W.2d 241 (1982). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 1989); *State v. Wood, ante* p. 63, 511 N.W.2d 90 (1994); *State v. Schrein*, 244 Neb. 136, 504 N.W.2d 827 (1993); *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991).

Applications to obtain telephone service furnished in an adjacent exchange are governed by Neb. Rev. Stat. § 75-613 (Reissue 1990):

Upon the completion of the hearing on such an application, if a hearing is required, the [PSC] may grant the application, in whole or in part, if the evidence establishes all of the following:

(1) That such applicant or applicants are not receiving, and will not within a reasonable time receive, reasonably adequate exchange telephone service from the company furnishing such service in the exchange service area in which the applicant or applicants reside or operate. The fact that an applicant is required to pay toll charges for long-distance telephone calls to an exchange service area adjacent to the territory in which the applicant resides or operates shall not be deemed to constitute inadequate exchange telephone service from the company furnishing such service;

(2) The revision of the exchange service area or areas required to grant the application will not create a duplication of facilities, is economically sound and will not impair the capability of the telephone company or companies affected to serve the remaining subscribers in any affected exchanges;

(3) The community of interest in the general territory is such that the public offering of each telephone company in its own exchange service area involved should include all the territory in its service area as revised by the commission's order; and

(4) The applicant or applicants are willing and will be required to pay such construction and other costs and rates as are fair and equitable and will reimburse the affected company for any necessary loss of investment in existing property as determined by the [PSC].

As the foregoing statute controls the adjudication of this matter, the appeal in part presents issues of statutory interpretation, which are questions of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. See, *Fecht v. Quality Processing, supra*; *Rigel Corp. v. Cutchall, post* p. 118, 511 N.W.2d 519 (1994). And of course, an appellate court determines the meaning of a statute independently of the determination made by an administrative agency. *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990).

However, deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent. *Department of Health v. Lutheran Hosp. & Homes Soc.*, 227 Neb. 116, 416 N.W.2d 222 (1987); *Department of Banking, Receiver v. Wilken*, 217 Neb. 796, 352 N.W.2d 145 (1984).

### III. FACTS

The father had, in 1974, 1975, and 1976, unsuccessfully attempted to have the service changed to Lincoln Telephone. The Jantzens filed the application presently under consideration on December 18, 1990. Notice of the filing was published on December 20, 1990. Diller Telephone filed its protest on January 23, 1991.

The evidence developed at that hearing establishes that the father lives 2 miles east and 2 miles south of Plymouth, where he has farmed since 1953. This home farm receives telephone service through Lincoln Telephone's Plymouth exchange. In 1974, the father purchased a second farm which is separated from the home farm by a "mile of ground or a mile of road" and is located 1 mile south and 1 mile east of the home farm. Notwithstanding that the second farm has a Plymouth address, is in the Plymouth fire district, and is located closer to Plymouth than to Diller, it is served by Diller Telephone's

Harbine exchange at Diller. A Lincoln Telephone cable is buried 108 feet north of the telephone service entrance to the second farm, while Diller Telephone has a cable 324 feet east of the service entrance.

The father testified that in 1988, the son moved into the house on the second farm and that he and the son began farming together. The numerous problems and expenses associated with conducting a single farm operation through two separate telephone companies caused this most recent application for a change in telephone service. Because of the expense of communicating between the two farms, calls are made on only a minimal basis for either business or pleasure. The father testified that as the son assumes more management responsibility, the two will need to communicate more.

The son testified that his primary reason for filing the application is to avoid toll calls. He further testified that his primary community of interest is with the Plymouth exchange. He pointed out that there is no bank, machinery dealer, county government office, veterinary clinic, or medical care service available to call in the Diller and Harbine exchanges. He also indicated that he carries on transactions with every business located in Plymouth. Of the 128 members in the son's church, 125 are Lincoln Telephone customers, while only two other than himself are customers of Diller Telephone.

William Sandman, Diller Telephone's manager, testified that Diller Telephone would suffer a $1,261.21 loss of investment if the application is granted, pointing out that Diller Telephone has upgraded the service it renders since the issue was last litigated before the PSC in 1976.

Diller Telephone opposes the application because it cannot afford to lose any customers. Sandman explained that because Diller Telephone is small and has a limited customer base for growth purposes, each customer is important; the departure of any customer could have a significant revenue impact made up by remaining customers.

The PSC then entered its first order, finding that the Jantzens were not receiving and would not, in a reasonable time, receive reasonably adequate telephone service from Diller Telephone and that the change in service would not create a duplication of

facilities, would not impair the capability of Diller Telephone, and was economically sound. In addition to requiring the Jantzens to pay Diller Telephone's loss of investment, the PSC required them to pay Lincoln Telephone the construction charge of $1,460 to connect the facilities.

The PSC next granted Diller Telephone's motion for rehearing. At the hearing on the motion, the son testified that he wants to call people on the Plymouth exchange without being assessed a toll charge and to be able to make unlimited calls to the Beatrice exchange of Lincoln Telephone for a small monthly fee; both services would be available if he switched to Lincoln Telephone. He elaborated that the operation he conducts with his father is served by the Plymouth exchange of Lincoln Telephone, while his brother, with whom he is also a partner in a separate farming business, receives service from the Beatrice exchange of Lincoln Telephone.

He also explained that in addition to his church, medical services, and neighborhood ties to the Plymouth exchange, he is an alumnus of the Tri-County school and a member of its booster organization. He is one of only two members of that organization receiving Diller Telephone service; the remainder are serviced by Lincoln Telephone.

The son added that his telephone number does not appear in the Plymouth exchange, that sometimes people have difficulty finding him because he is listed in the Harbine exchange, and that even if they do locate him, they do not call him because it is a long-distance call.

The son also testified that the primary reason for his application had changed from the time of the first hearing, in which he stated his sole purpose was to avoid toll charges. He now explained that his primary reasons for applying for this change in service are to integrate the farm operation with his father and be able to communicate better and to avoid the problems that exist with people not being able to find him.

Sandman feared that the loss of 1 customer might lead to a loss of 10 customers, and a loss of 10 customers would be critical to the company; Diller Telephone has approximately 870 subscribers, 120 served by the Harbine exchange. He conceded, however, that the basic rate for service would not

change simply because one customer left its service.

Arnold White, an accountant, testified that in calculating Diller Telephone's loss of investment at $1,261.21, he applied a depreciation value to the plant investments of the central office equipment and building, the span lines between the host and remote office, and the buried telephone cable route that serves one subscriber. That total was then divided by the number of subscribers served by the Harbine exchange to get a cost per individual subscriber. White then added a cost for retirement of the plant.

White testified that granting this application would not be economically sound and that eventually, future revenues lost by the departure of the Jantzens and a series of other such subscribers could result in increased rates.

Norm Osland, president of the Nebraska Telephone Association, testified on behalf of Diller Telephone that both his organization and the Rural Electrification Administration are committed to maintaining franchise boundary integrity. The administration's loans to Diller Telephone and other small telephone companies are based partly on those boundaries.

The PSC then entered its second order, which denied the application, finding that it had initially miscalculated Diller Telephone's investment loss and, further, that the Jantzens had failed to meet the statutory requirements for a change in service.

The Jantzens thereupon filed a motion for rehearing, which resulted in the PSC's third order, as described in part I above.

## IV. ANALYSIS OF COURT OF APPEALS' RULING

Our first task is to determine whether the Court of Appeals was correct in ruling that Diller Telephone had waived its opposition and was thus precluded from participating in the proceedings before the PSC.

### 1. RULES NOT OF RECORD

The opinion of the Court of Appeals sets forth certain PSC rules of procedure which are not part of the record. We have held that because establishing the existence and contents of a particular administrative rule or regulation at any given time is often a difficult and uncertain process, it is an established

principle of appellate practice that, as a general rule, a reviewing court will not take judicial notice of the internal operating rules of administrative agencies. See, *Dairyland Power Co-op v. State Bd. of Equal.*, 238 Neb. 696, 472 N.W.2d 363 (1991); *Donahoo v. Nebraska Liquor Control Comm.*, 229 Neb. 197, 426 N.W.2d 250 (1988); *Zybach v. State*, 226 Neb. 396, 411 N.W.2d 627 (1987); *Nevels v. State*, 205 Neb. 642, 289 N.W.2d 511 (1980).

## 2. RULE OF RECORD

However, because the record does include the PSC's statement of its rule of procedure requiring "protests to be filed within thirty days of the date of publication of notice," we are able to consider whether Diller Telephone's protest, filed on the 31st day after notice of the application was published, enabled Diller Telephone to participate in the proceedings.

### (a) General Considerations

In certain circumstances, administrative agencies are permitted to depart from their own regulations. *Sun Oil Company v. Federal Power Commission*, 256 F.2d 233 (5th Cir. 1958), *cert. denied* 358 U.S. 872, 79 S. Ct. 111, 3 L. Ed. 2d 103 (administrative agency not slave to own rules). See, *United States v. Caceres*, 440 U.S. 741, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979); *Modern Plastics Corporation v. McCulloch*, 400 F.2d 14 (6th Cir. 1968); *National Labor Relations Bd. v. Monsanto Chemical Co.*, 205 F.2d 763 (8th Cir. 1953). It has been held that it is within the discretion of an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. *American Farm Lines v. Black Ball*, 397 U.S. 532, 90 S. Ct. 1288, 25 L. Ed. 2d 547 (1970); *Aeronautical Radio, Inc. v. F. C. C.*, 642 F.2d 1221 (D.C. Cir. 1980), *cert. denied* 451 U.S. 920, 101 S. Ct. 1998, 68 L. Ed. 2d 311 (1981); *City of Groton v. Federal Energy Reg. Com'n*, 584 F.2d 1067 (D.C. Cir. 1978).

Most courts which have allowed departures from agency rules have found that the violated regulations were intended to govern agency procedures rather than to protect any interest of the objecting party. See, *American Farm Lines v. Black Ball, supra*; *National Labor Relations Bd. v. Monsanto Chemical*

*Co., supra.*

Where the rules of an agency require certain information to be filed before a matter or rate can be considered, the agency's discretion to waive the information will not be reviewed. In *American Farm Lines*, a motor carrier's request for temporary operating authority with the Interstate Commerce Commission was granted despite the argument of competing carriers that the filing violated commission requirements. The U.S. Supreme Court ruled that the commission's decision to relax its filing requirements was not reviewable; the rules were promulgated for the purpose of providing the necessary information for the commission to reach an informed and equitable decision and were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion.

Likewise, the U.S. Court of Appeals for the District of Columbia Circuit refused to review the waiver of the rules requiring a carrier to supply the Federal Communications Commission with information necessary to determine whether the investigation and suspension of proposed rate increases should be ordered in *Associated Press v. F. C. C.*, 448 F.2d 1095 (D.C. Cir. 1971). The court determined the rules were " 'mere aids to the exercise of the agency's independent discretion' " and in the absence of substantial prejudice to the complaining party would not be reviewed. *Id.* at 1104. See, *Union Texas Products Corp. v. F.E.R.C.*, 899 F.2d 432 (5th Cir. 1990) (overruling commission's $1.8 million penalty on seller for its failure to file required one-page form giving advance notice of proposed rate increase); *Neighborhood TV Co., Inc. v. F.C.C.*, 742 F.2d 629 (D.C. Cir. 1984) (where rule governs the information agency requires before it will consider a filing by one it regulates, courts have been especially apt to allow agencies much leeway in granting waivers to own rules); *Superior Oil Co. v. Federal Energy Reg. Com'n*, 667 F.2d 1180 (5th Cir. 1982) (commission's punctilious insistence that failure to follow its directions in minor respect should result in such disproportionately heavy penalty works manifest injustice and constitutes abuse of discretion); *Aeronautical Radio, Inc. v. F.C.C., supra* (agency's determination as to what data it

requires in making discretionary decision cannot provide basis for that court to mandate rejection of tariff filing made without supporting economic data); *Municipal Elec. Util. Ass'n of Ala. v. Federal Power Com'n*, 485 F.2d 967, 973 n.23 (D.C. Cir. 1973) (filing rules are " 'mere aids to the exercise of the agency's independent discretion' " and in both language and purpose leave room for doctrine of substantial or reasonable compliance); *National Labor Rel. Bd. v. National Container Corp.*, 211 F.2d 525 (2d Cir. 1954). Contra *New Mexico Navajo Ranchers Ass'n v. I.C.C.*, 702 F.2d 227 (D.C. Cir. 1983), *appeal after remand* 850 F.2d 729 (D.C. Cir. 1988) (failure of commission to insist on strict compliance with regulations affords basis for invalidation of its approval of rail line).

The applicability of an agency's discretion in waiving a regulation turns on whether it was intended to aid the agency or, instead, to benefit outside parties. *City of Fredericksburg, VA. v. F.E.R.C.*, 876 F.2d 1109 (4th Cir. 1989). Agency violations of regulations which have been promulgated to benefit a party, by entitling the party to a substantive benefit or exemption or to a procedural safeguard, have been invalidated by courts. See, *Montilla v. I.N.S.*, 926 F.2d 162 (2d Cir. 1991) (alien claiming that service failed to adhere to own regulations regarding right to counsel in deportation hearing not required to make showing of prejudice before being entitled to relief); *Vitarelli v. Seaton*, 359 U.S. 535, 79 S. Ct. 968, 3 L. Ed. 2d 1012 (1959) (discharge from government employment vacated); *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S. Ct. 499, 98 L. Ed. 681 (1954) (Court vacated deportation order because procedure leading to order did not conform to relevant regulations of Board of Immigration Appeals).

Many courts will review a waived rule or regulation only upon a showing of substantial prejudice to the complaining party. See, *Onslow County, N.C. v. U.S. Dept. of Labor*, 774 F.2d 607 (4th Cir. 1985) (agency regulations not mandated by federal law are not entitled to degree of judicial deference and enforcement due those promulgated under compulsion of law); *Mississippi Valley Gas Co. v. F. E. R. C.*, 659 F.2d 488 (5th Cir. 1981) (natural gas pipeline's rate filing not in compliance with commission regulations not patently defective in absence of

prejudice to complaining party); *E. E. O. C. v. Raymond Metal Products Co.*, 530 F.2d 590 (4th Cir. 1976); *Equal Employment Op. Com'n v. Laclede Gas Co.*, 530 F.2d 281 (8th Cir. 1976); *Equal Employment Op. Com'n v. Kimberly-Clark Corp.*, 511 F.2d 1352 (6th Cir. 1975), *cert. denied* 423 U.S. 994, 96 S. Ct. 420, 46 L. Ed. 2d 368 (when agency neglects to follow procedural rule but failure inflicts no substantial injury on party entitled to observance of rule, error does not prevent further administrative or judicial action; instead, error should be considered harmless). Contra *Equal Employment Op. Com'n v. Hickey-Mitchell Co.*, 507 F.2d 944 (8th Cir. 1974) (cannot conclude employer not prejudiced by commission's relaxation of rule requiring commission to notify employer when it intends to cease administrative efforts and resort to courts).

Procedural challenges to the filing of late petitions and motions in violation of an agency's rules have, for the most part, failed. In *Dana Corp. v. I.C.C.*, 703 F.2d 1297 (D.C. Cir. 1983), the commission's acceptance of a petition for stay that was filed late and its issuance of a stay after the board's decision had become effective were challenged as contrary to the commission's regulations. In holding that neither challenge was valid, the court interpreted the timing requirements as provisions designed to facilitate the commission's orderly transaction of its business and not designed primarily to safeguard private rights. In light of the commission's overriding responsibility to protect the public interest, the court did not think it necessary to imply either an absolute requirement for dismissal of late-filed petitions or an inability to stay erroneous determinations after their effective date.

However, in remanding for further proceedings a $500 attorney fee award granted in violation of the agency's own regulations requiring a complete statement of the extent and character of work done, the same federal circuit court stated that in the absence of a reasoned determination that in a given case the ends of justice require a departure from an agency's regulations, they must be observed. *Matthews v. Walter*, 512 F.2d 941 (D.C. Cir. 1975). In a footnote to that decision, the court appears to confirm that the ability to waive an agency

regulation depends on whether the regulation is merely a procedural rule for the orderly transaction of agency business or confers an important procedural benefit.

Courts have also upheld the discretion of agencies to accept applications filed past the submission deadline. In *National Labor Relations Bd. v. Monsanto Chemical Co.*, 205 F.2d 763, 764 (8th Cir. 1953), the court rejected the argument that having set a deadline, the agency was without power to waive it: "The bald argument on behalf of respondents is that the Board is powerless in the public interest to relax the time provisions of its procedural rules in any case before it. This contention is not worthy of serious consideration." See *Health Systems Agency of Okl., Inc. v. Norman*, 589 F.2d 486 (10th Cir. 1978) (where deadline for submission of application for designation as health systems agency was not statutory but was wholly arbitrary one, the Department of Health, Education and Welfare was not without discretion to accept late applications, and submission deadline was not jurisdictional).

In *Montship Lines, Limited v. Federal Maritime Board*, 295 F.2d 147 (D.C. Cir. 1961), the court ruled that the maritime board's consideration of motions for reconsideration filed after the 30-day period provided by its rules constituted a waiver of the board's own limitation period. In so ruling, the *Montship Lines, Limited* court distinguished between the consideration of an untimely motion for rehearing or reconsideration in violation of a limitation period fixed by Congress and a time limitation imposed by an agency itself. See, also, *Copper Valley Mach. Works, Inc. v. Andrus*, 653 F.2d 595 (D.C. Cir. 1981).

A framework for the review of an agency's deviation from its own regulations was given in *American Farm Lines v. Black Ball*, 397 U.S. 532, 90 S. Ct. 1288, 25 L. Ed. 2d 547 (1970). The analysis requires that a determination must be made as to whether the internal regulation was intended to (1) require the agency to exercise its independent discretion, (2) confer a procedural benefit on a class to which complainant belongs, or (3) be a "mere aid" to guide the exercise of agency discretion. If the regulation is such an aid, then a further determination must be made as to whether the complainant has been substantially prejudiced. See, *American Farm Lines v. Black Ball, supra;*

*Port of Jacksonville v. U.S. Coast Guard*, 788 F.2d 705 (11th Cir. 1986); *Alamo Express, Inc. v. United States*, 613 F.2d 96 (5th Cir. 1980).

### (b) Nebraska Precedent

Although we have not heretofore determined whether the failure to file a timely protest waives the right of the protestant to participate in an agency proceeding, the Court of Appeals mistakenly cites *Douglas County Welfare Administration v. Parks*, 204 Neb. 570, 284 N.W.2d 10 (1979), as controlling. In *Parks*, former county employees appealed from the termination of their employment to the Joint Merit System Council of Nebraska. The Joint Merit System Council denied the appeals because they were filed out of time, but a year later reversed its decision and granted the appeal hearing. In holding that the Joint Merit System Council had no authority to waive its own rules as to the time for filing an appeal, we wrote:

> Generally, rules and regulations of an administrative agency governing proceedings before it, duly adopted and within the authority of the agency, are as binding as if they were statutes enacted by the Legislature. Likewise, procedural rules are binding upon the agency which enacts them as well as upon the public, and the agency does not, as a general rule, have the discretion to waive, suspend, or disregard, in a particular case, a validly adopted rule so long as such rule remains in force. This is true even though the adoption of the rule was a discretionary function, and plenary powers, or powers resting in the absolute discretion of an agency, may thus be rendered subject to procedural limitations. To be valid, the action of the agency must conform to its rules which are in effect at the time the action is taken, particularly those designed to provide procedural safeguards for fundamental rights.

*Id.* at 572, 284 N.W.2d at 11-12.

In so holding, we rejected the appellants' argument that the Joint Merit System Council could waive its own rules with regard to filing for an appeal and hear such cases as it desired. We found no authority for such a rule, nor any reason to consider that the rule setting the time for appeal was not

applicable, particularly where the unexcused delay was for more than 3 months at the very least. See, also, *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989) (agency regulations properly adopted and filed with Secretary of State have effect of statutory law).

Similarly, in *Douglas Cty. Health Dept. Emp. Assn. v. Douglas Cty.*, 229 Neb. 301, 427 N.W.2d 28 (1988), we affirmed the Nebraska Commission of Industrial Relations and held that the county was not entitled to file a counterclaim to the county health department association's petition beyond the time period prescribed by the commission's rules for filing an answer.

The decision in *Parks* refusing to uphold the agency's waiver of its own rule follows from the fundamental rights which the rule protected. The agency's rule therein prescribed the time of filing of an appeal. Such time limits are jurisdictional. See, *State v. Flying Hawk*, 227 Neb. 878, 420 N.W.2d 323 (1988); *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986). Failure to appeal within the statutory requirements removes the jurisdiction of the case from the court. See, *State v. Flying Hawk, supra*; *Smith v. Smith*, 225 Neb. 93, 402 N.W.2d 688 (1987). Therefore, in *Parks*, the Joint Merit System Council had no jurisdiction to hear the appeals; that is a different matter than is presented by rules relating to filing deadlines, which are mere aids to the conduct of an agency's business. While it is true that in *Douglas Cty. Health Dept. Emp. Assn.*, we upheld the commission's decision not to waive its filing deadline, it does not follow that we would have reversed the commission had it decided to waive its rule. An agency must have sufficient latitude in its operations and in matters under its jurisdiction to exercise that jurisdiction fairly. *Basin Elec. Power Co-op v. Little Blue N.R.D.*, 219 Neb. 372, 363 N.W.2d 500 (1985).

The PSC's discretion to allow Diller Telephone to participate in the hearings can be compared to a trial court's discretion extending the time in which to file an untimely answer or reply. See, *Mason State Bank v. Sekutera*, 236 Neb. 361, 461 N.W.2d 517 (1990); *Greenwood v. Cobbey*, 24 Neb. 648, 39 N.W. 833 (1888). While the determination of whether a party in default may be permitted to answer rests largely within the discretion of the trial court, *Anest v. Chester B. Brown Co.*, 169 Neb. 330, 99

N.W.2d 615 (1959), and *Mason State Bank v. Sekutera, supra,* we have held that where it is apparent that the party in default has a meritorious defense to an action, the court must permit the answer to be filed despite the fact that the time to answer has passed, *Anest v. Chester B. Brown Co., supra.*

Under Neb. Rev. Stat. § 75-612 (Reissue 1990) and § 75-613, the Jantzens were required, irrespective of whether Diller Telephone participated, to present evidence to establish their case. See *In re Application of George Farm Co.,* 233 Neb. 23, 443 N.W.2d 285 (1989). Therefore, the PSC's rule in question was but an aid to help the PSC in its decision; it did not confer a procedural benefit upon a party.

Indeed, if Diller Telephone's evidence had not been admitted, there would have been no information regarding its "loss of investment," as required by § 75-613(4). Thus, not only was there no prejudice to the Jantzens in allowing Diller Telephone to participate, Diller Telephone's participation helped the Jantzens make the necessary record.

Adopting and applying the analytical framework set forth in *American Farm Lines v. Black Ball,* 397 U.S. 532, 90 S. Ct. 1288, 25 L. Ed. 2d 547 (1970), and considering the deference given an agency's interpretation of its own rules and regulations (see part II above), we cannot say that the PSC's failure to insist on strict compliance with its own filing deadlines constituted an abuse of discretion.

Thus, the Court of Appeals erred in ruling that Diller Telephone had waived any objection it had to the Jantzens' application and forfeited any right to participate in the proceedings.

### V. ANALYSIS OF DILLER TELEPHONE'S SUMMARIZED ASSIGNMENTS OF ERROR

In the interest of judicial economy, we will review Diller Telephone's summarized assignments of error rather than remanding the cause to the Court of Appeals.

#### 1. EVIDENCE CONSIDERED

In the first summarized assignment of error, Diller Telephone urges that in connection with the "adequacy of service" issue, the PSC erred in considering certain evidence, including the

testimony that those calling the son must pay toll charges. More specifically, Diller Telephone urges that § 75-613(1) precludes consideration of any toll charges in determining whether service is adequate. This is simply not so.

The statute clearly precludes the PSC from considering the applicants' toll charges for long-distance calls they make. But there is no mention in the statute prohibiting the PSC from taking into consideration that members of an applicant's community of interest are reluctant to call the applicant because of toll charges they would incur.

In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Fecht v. The Bunnell Co.*, 243 Neb. 1, 497 N.W.2d 50 (1993); *Curry v. State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993); *In re Interest of M.J.B.*, 242 Neb. 671, 496 N.W.2d 495 (1993). It is a court's duty, if possible, to discover the Legislature's intent from the language of the statute itself. *Fecht v. The Bunnell Co., supra*; *Curry v. State ex rel. Stenberg, supra*; *In re Interest of M.J.B., supra*. In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *Fecht v. The Bunnell Co., supra*; *Curry v. State ex rel. Stenberg, supra*; *Hamilton v. Hamilton*, 242 Neb. 687, 496 N.W.2d 507 (1993); *In re Interest of M.J.B., supra*.

The plain meaning of the statutory language allows the PSC to consider, in determining the adequacy of the service the applicants receive, the evidence that toll charges deter others in the son's community of interest from calling him. The issue is not, as Diller Telephone asserts, that it is accountable for toll charges which persons in adjacent telephone service areas are required to pay, but, rather, that the service as operated curtails calls to the son from those in his community of interest.

In view of this determination and the conclusion which follows, we need not, and therefore do not, concern ourselves with whether the PSC properly received the other evidence before it.

## 2. Nature of PSC's Decision

In its second and last summarized assignment of error, Diller Telephone claims the PSC's order is arbitrary and capricious. In this regard, Diller Telephone asserts that there is no competent evidence to support the PSC's conclusions (a) that the son does not receive calls because of the toll charges, (b) that Diller Telephone does not provide adequate telephone service to the son's community of interest, and (c) as to the amount of Diller Telephone's loss of investment.

### (a) Toll Charges

As noted earlier, in determining that the son receives inadequate service, the PSC relied in part on the son's testimony that members of his community of interest do not call him because of the toll charges they would incur.

Diller Telephone urges that the evidence on this issue was purely speculative and, as such, does not support the PSC's findings.

One difficulty with Diller Telephone's contention is that it did not object to the son's testimony in this regard. Whatever may be the PSC's "relaxed rules" of evidence, *In re Application of Overland Armored Exp.*, 229 Neb. 524, 530, 428 N.W.2d 166, 170 (1988), if, when inadmissible evidence is offered, the party against whom such evidence is offered consents to its introduction, or fails to object or to insist upon a ruling on the objection to introduction of such evidence, and otherwise fails to raise the question as to its admissibility, that party is considered to have waived whatever objection he or she may have had thereto, and the evidence is in the record for consideration the same as other evidence, *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992), and *Griffith v. Griffith*, 230 Neb. 314, 431 N.W.2d 609 (1988).

Thus, the question is merely one of credibility of the witnesses and the weight it should be given. The credibility of witnesses and the weight to be given their testimony were for the PSC as the trier of fact. See, *Douglas Cty. Health Dept. Emp. Assn. v. Douglas Cty.*, 229 Neb. 301, 427 N.W.2d 28 (1988); *City of Omaha v. Omaha Police Union Local 101*, 222 Neb. 197, 382 N.W.2d 613 (1986). It must be kept in mind that

determinations by the PSC are a matter peculiarly within its expertise and involve a breadth of judgment and policy determination that will not be disturbed by an appellate court in the absence of a showing that the action of the PSC was arbitrary or unreasonable. *In re Application of Northwestern Bell Tel. Co.*, 218 Neb. 563, 357 N.W.2d 443 (1984); *In re Application of ATS Mobile Telephone*, 213 Neb. 403, 330 N.W.2d 123 (1983). The striking of the balance between the competing interests of legitimate competition and the protection of the public interest is a matter of legislative and administrative determination peculiarly resting in the judgment of the PSC. *Id.*

Where the question is one of the competency of evidence, see part II above, the issue on appeal is whether the PSC's decision was arbitrary and capricious. Arbitrary action has been defined by this court, with reference to administrative agencies, as action taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion. *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991). See, *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990); *Percival v. Department of Correctional Servs.*, 233 Neb. 508, 446 N.W.2d 211 (1989). The record on its face must reflect an adequate basis from which the PSC can base its decision. See *In re Application of Northwestern Bell Tel. Co., supra.*

A capricious decision is one guided by fancy rather than by judgment or settled purpose; such a decision is apt to change suddenly; it is freakish, whimsical, humorsome. *In re Application A-16642, supra.*

An agency's judgment must be based on a factual foundation and must give due consideration to all the essential elements involved. *Godden v. Department of Public Welfare*, 193 Neb. 269, 226 N.W.2d 627 (1975). If there is evidence to sustain the findings of the PSC, an appellate court cannot substitute its judgment for that of the commission. *In re Application of Northwestern Bell Tel. Co., supra*; *In re Application of ATS Mobile Telephone, supra.*

The evidence, as detailed in part III above, is overwhelming that the son's community of interest is in Plymouth. Despite the

conditional wording of the PSC's finding that "[i]f [members of an applicant's community of interest] do not call because of the toll charges, then the service received by the applicant is not adequate," the fair import of the finding is that calls to the son are hampered because of the toll charges.

(b) Adequacy of Service Provided

Diller Telephone next asserts that the PSC's finding that adequate service is not provided to the son's community of interest is not supported by competent evidence.

Diller Telephone argues that the PSC's reliance on *In re Application of George Farm Co.*, 233 Neb. 23, 443 N.W.2d 285 (1989), in this regard is misplaced and that, in any event, the case was wrongly decided. Diller Telephone is wrong on both counts.

In *In re Application of George Farm Co.*, the applicant farm corporation applied to have its property removed from Northeast Nebraska Telephone Company's service area and placed within Northwestern Bell Telephone Company's service area. Three residences were located on the corporation's property, which was divided approximately in half by the boundary line separating the two telephone companies. The president of the corporation and an employee lived in houses located within one-fourth of a mile of Northwestern Bell's boundary line, but were served by Northeast Nebraska Telephone. A trailer home on the property was served by Northwestern Bell. The corporation did virtually all of its business within Northwestern Bell's service area, and its business and social contacts were in Northwestern Bell's service area as well. Because the applicant subscribed to a flat-rate foreign-exchange service, it was not charged for long-distance calls made to Northwestern Bell's service area.

Based on the corporation president's statement that the existing telephone service was " 'okay,' " *id*. at 25, 443 N.W.2d at 287, the PSC denied the application. On appeal, we reversed and ordered that the service be changed as the corporation requested. We reasoned that it made no sense for half of the farm property to be within one exchange and the other half to be within another. We also concluded that forcing the

corporation to bear the burden of paying for two telephone services for the same property so that the occupants might have adequate service to the general area constituting their community of interest was arbitrary and unreasonable. The order appealed was thus arbitrary and capricious.

Diller Telephone argues first that the *In re Application of George Farm Co.* record did not support our conclusion that the farm corporation was forced to pay for two telephone services for the same property; rather, that was a choice made by the corporation in order to avoid long-distance toll charges. It also urges that because the foreign-exchange charge was essentially a discounted monthly toll charge for long-distance calls, the PSC could not have considered the service inadequate.

However, the overriding consideration was that because the farm corporation's property was served by two telephone companies, the corporation could obtain adequate service to its community of interest only by paying for foreign-exchange service. Yet, the corporation's only contact with Northeast Nebraska Telephone was the fact that part of the corporation's property fell within Northeast Nebraska Telephone's service area. Thus, the entire record demonstrated that the denial of the corporation's request was arbitrary and capricious.

Nonetheless, Diller Telephone argues that *In re Application of George Farm Co.* is not applicable to the case at hand because, whereas in *In re Application of George Farm Co.*, a single party owned one continuous piece of property bisected by two telephone companies, here there are two pieces of property separated by a mile of ground or road.

But what makes *In re Application of George Farm Co.* applicable is the fact that both properties involved here are owned by the same individual, the father, and constitute but a single farm operation. Both the father and son testified to the recurring problems caused by having to deal with two telephone companies. The impact of multiple telephone service is the same whether a farm operation is conducted on one piece of land or on two nearby pieces. The important consideration is that the Jantzens can obtain adequate service to their community of interest only by having both parts of their operation serviced by one telephone company.

### (c) Loss of Investment

The difference between the investment loss of $338.91 found by the PSC and the $1,261.21 claimed by Diller Telephone rests on the PSC's refusal to include in its computation the costs of physically disconnecting the Jantzens' line, the costs Diller Telephone foresaw in keeping a record of the Jantzens' removal from its service, and Diller Telephone's investment in its plant.

In *Hartman v. Glenwood Tel. Membership Corp.*, 197 Neb. 359, 249 N.W.2d 468 (1977), we rejected Glenwood's theory that the subscriber who succeeded in changing his service would have to pay investment costs for sections other than the one that served him. We found reasonable the PSC's calculation, which included the depreciated investment cost per subscriber on the section serving the successful subscriber and connection costs for that section, plus the cost of removing the drop line to the subscriber's residence.

The PSC's computation of Diller Telephone's investment loss as consisting of the depreciated value of the items connecting the second farm to the service provided by Diller Telephone is not arbitrary and capricious, but reasonable.

### VI. JUDGMENT

For the foregoing reasons, the judgment of the Court of Appeals is affirmed but modified by the direction that it reinstate the third order of the PSC.

AFFIRMED AS MODIFIED.